UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICARDO HARMIS,

    Plaintiff,

v.

TRBR, INC., d/b/a SUPERIOR
BUICK GMC,

    Defendant.

                         /

Case No. 2:18-cv-11448

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [23]**

Plaintiff Ricardo Harmis ("Harmis") filed a complaint against Defendant TRBR, Inc., d/b/a Superior Buick GMC ("Superior"), in Wayne County Circuit Court. ECF 1-2. Superior answered the complaint and timely removed the action. ECF 1; ECF 1-3. Harmis then filed an amended complaint. ECF 15. And on July 22, 2019, Superior filed a motion for summary judgment. ECF 23. The Court reviewed the briefs and finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the Court will grant Superior's motion for summary judgment.

**BACKGROUND**

The action involves an employment dispute. Superior is a car dealership owned by Tanya and Bas Robin. ECF 15, PgID 94. Harmis, the Robins' nephew, worked as a salesman at Superior. *Id.* Harmis alleged that he began experiencing work-related stress and was diagnosed with "panic, stress, and depression." *Id.* The Robins claimed that Harmis was continually tardy and had difficulty meeting all of the requirements

1

of the position, particularly the requirement of finalizing his deals in the system. ECF 23, PgID 171–72. By July 2017, the parties' relationship seemed to have deteriorated significantly. On July 25, 2017, Harmis asked for FMLA paperwork so that he could obtain leave for his anxiety and depression. ECF 29-5. Later that day, the Robins met with Harmis and questioned him about his inadequate performance, told him that he could no longer have access to the system, and asked him what was causing the issues in his employment. ECF 23, PgID 173. They then offered Harmis a severance package and told him to have his attorney look over it. ECF 29-6, PgID 622 (transcript of the recording of the July 25, 2017, meeting). The Robins gave Harmis until the close of business on July 26, 2017, to decide if he wanted to accept the severance package. ECF 23-7, PgID 266.

When the Robins heard nothing from Harmis on July 26th, Ms. Robins emailed and text messaged Harmis and said that because he failed to return the signed severance package by the deadline, she assumed he wanted to continue working. ECF 23-8, PgID 269–70. She then informed him that he had to report to work the following day and that he needed to continue to show up for work until he submitted the FMLA paperwork. *Id.* at 269. When Harmis failed to show up for work on July 27th, Ms. Robins emailed him again and told him that Superior considered him to have abandoned his employment. ECF 23-9, PgID 273; ECF 23-10, PgID 275.

## LEGAL STANDARD

Summary judgment is proper if there is "no genuine dispute as to any material fact" and a party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

2

fact is material for purposes of summary judgment if its resolution would establish or refute an "essential element[] of a cause of action or defense asserted by the parties[.]" *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Black's Law Dictionary* 881 (6th ed. 1979)).

The Court views the facts and "draw[s] all reasonable inferences in the light most favorable to the nonmoving party." *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 848 (6th Cir. 2016) (citation omitted). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). And although the Court may not make credibility judgments or weigh the evidence, *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015), a mere "scintilla" of evidence is insufficient to survive summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff," *Anderson*, 477 U.S. at 252.

## DISCUSSION

In his amended complaint, Harmis alleges violations of the FMLA, the Michigan Sales Representative Commission Act ("SRCA"), the Michigan Persons with Disabilities Civil Rights Act ("PDCRA"), the Elliott-Larsen Civil Rights Act ("ELCRA"),[1] the Americans with Disabilities Act ("ADA"), Title VII, and breach of

---

[1] Plaintiff brought a claim for violation of the Michigan Civil Rights Act, and alleged he was subjected to a hostile work environment. The Court will construe the claim as arising under Michigan's Elliott-Larsen Civil Rights Act.

3

contract. ECF 15. Superior argues that each claim lacks merit. ECF 23, PgID 176. The Court will address each in turn.

I. <u>Abandonment vs. Termination</u>

As an initial matter, the parties dispute whether Harmis was terminated from his employment at Superior or whether Harmis voluntarily abandoned his employment. Superior argued that Harmis abandoned his employment when he did not show up to work on July 26 and 27, 2017, and that he quit his position. ECF 23, PgID 176–80. Harmis claimed that he was fired. ECF 29, PgID 494–97. In a related unemployment benefits proceeding, an administrative law judge ("ALJ") initially determined that Harmis had abandoned his job. ECF 29-6, PgID 634. But, on appeal, Wayne County Circuit Court Judge Lita Popke reversed the ALJ. *Id.* at 635. The Court, however, need not reach a resolution of the nature of Harmis' separation from Superior because, even assuming he was terminated, his claims fail as a matter of law.

II. <u>The FMLA</u>

"The FMLA provides that an eligible employee . . . is entitled to medical leave in the event of 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 553–54 (6th Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)). There are two "theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Id.* at 555 (internal quotation omitted).

4

Harmis did not expressly indicate under which theory he brought his claim, and the allegations in his amended complaint indicate that it could be either. *See* ECF 15, PgID 96 (Superior's actions "constituted interfering with, restraining, denying exercise of rights of, or retaliating against an employee in violation of the" FMLA). The Court will therefore analyze his claims under each theory.

*A.     Interference*

To succeed on an FMLA interference claim, Harmis must show by a preponderance of the evidence that: (1) he was an eligible employee; (2) Superior was an employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave notice of his intentions to take leave; and (5) Superior denied him or interfered with his ability to take advantage of the FMLA benefits to which he was entitled. *Killian*, 454 F.3d at 556 (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).

Here, Superior does not dispute the first two elements. Rather, it argues that Harmis did not provide Superior notice of his intentions and that he never timely filed the requisite FMLA leave paperwork. ECF 23, PgID 182–89. Based on the evidence viewed in the light most favorable to Harmis, he arguably did provide Superior notice of his intent to take FMLA leave when he requested the paperwork to do so from human resources ("HR"). But Superior did not deny him leave or interfere with his ability to fill out the paperwork to request leave. In fact, Harmis' supervisors told him, via text message and email, to fill out and submit the paperwork. ECF 23-8. But Harmis chose not to complete the paperwork and stopped

5

showing up for work or communicating with his superiors. Harmis' mere request for paperwork without then actually filling out and submitting it was insufficient to entitle him to FMLA leave. He was required to submit the paperwork that provided the reason he qualified for FMLA leave and supporting medical documentation to invoke FMLA protections. *See Walton*, 424 F.3d at 483, 486. Harmis simply failed to do so on his own accord, and Superior did nothing to interfere was his ability to seek FMLA leave.

B.   *Retaliation*

An FMLA retaliation claim is governed by the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). Under the *McDonnell Douglas* framework, Harmis has the burden of demonstrating a prima facie case of retaliation. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001) (citing *McDonnell Douglas*, 411 U.S. at 802). To demonstrate a prima facie case, Harmis must show that: (1) he was engaged in activity protected by the FMLA; (2) Superior knew that he was exercising his rights under the FMLA; (3) after learning of his exercise of FMLA rights, Superior took an employment action adverse to Harmis; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Killian*, 454 F.3d at 556 (citation omitted).

If Harmis establishes a prima facie case, the burden shifts to Superior to articulate a legitimate, non-retaliatory reason for the adverse action. *See Skrjanc*, 272 F.3d at 315 (citing *McDonnell Douglas*, 411 U.S. at 802–04). And if Superior does

6

so, the burden shifts back to Harmis to demonstrate that the articulated reason is merely a pretext designed to mask discrimination. *See id.* (citing *McDonnell Douglas*, 411 U.S. at 804–06).

Here, Harmis never completed the requisite paperwork to be afforded FMLA protections. Any retaliation claim therefore cannot be based on allegations of Harmis' termination for taking medical leave. But he could base a retaliation claim on his alleged termination from showing intent to take medical leave or for requesting the requisite paperwork from HR. That claim still must fail, however, because Harmis cannot show a causal connection between his request for the FMLA paperwork and his alleged termination.

As the evidence indicates, Harmis failed to show up to work for part of the day on July 25, 2017, and for the entire day on July 26, 2017. He acknowledged that he received text messages and emails from his supervisor after he missed work on July 25th without calling; the messages stated that he needed to continue to show up to work until he completed and submitted his FMLA paperwork. ECF 23-2, PgID 224. Harmis again failed to come to work the next day. His no-call/no-show absence, on top of the many other issues with Harmis' attendance and work ethic and product, was legitimate cause for Superior to terminate him. And Harmis provides no evidence that Superior's rationale is a pretext for discrimination. Harmis' only stated connection between his demonstration of intent to seek FMLA leave and his termination is temporal proximity, which is insufficient to meet the nexus element of a prima facie FMLA retaliation case. *Skrjanc*, 272 F.3d at 317.

7

Harmis' FMLA claims are further discredited by the fact that his story changed numerous times throughout the litigation as to why he believed he was terminated. One version of his story was that the only reason he was terminated was because he had a non-Chaldean girlfriend—a story that changed after a recess was taken during his deposition and he was able to discuss the story with his attorney. *See* ECF 23-2, PgID 217–20.

Harmis failed to meet his burden on both theories under the FMLA. The Court will therefore grant Superior summary judgment as to his FMLA claims.

III. <u>Breach of Contract and the SRCA</u>

Harmis alleged that Superior failed to pay him "commissions" due under the commissions agreement he entered into with Superior and under Michigan's SRCA. ECF 15, PgID 97–98. Under the SRCA, Harmis must prove that he was contractually entitled to commissions and that Superior failed to pay him the commissions within 45 days after they became due. *Bailey v Fast Model Techs., LLC*, No. 10-15118, 2012 WL 2601882, at *2 (E.D. Mich. July 5, 2012). Harmis' claims therefore turn on whether he is owed any commissions under the parties' commission agreement. *See Clark Bros. Sales Co. v. Dan Corp.*, 77 F. Supp. 2d 837, 852 (E.D. Mich. 1999) (finding that "the SRCA does not 'create a new obligation or impose a new duty' to pay sales commissions, and that a principal 'who was not liable under the common law is not liable under the SRCA'") (citing *Flynn v. Flint Coatings, Inc.*, 230 Mich. App. 633, 637 (1998), *overruled on other grounds* by *Frank W. Lynch & Co., v. Flex Tech., Inc.*, 463 Mich. 578 (2001)).

8

The commission agreement is unambiguous. It states that "commission earned on new vehicle sales will be 25%." ECF 23-21, PgID 309. Harmis does not dispute that he entered into and signed the commission agreement. Rather, he claims that the Robins told him "secretly" that by signing the agreement, he would receive 30% in commissions instead. ECF 23-2, PgID 232–33. But the contract expressly and unambiguously provides for only 25% commission, and the Court cannot "look to any extrinsic evidence . . . that might support or undermine this stated intent." *Clark Bros. Sales*, 77 F. Supp. 2d at 845 (citing *Sheldon-Seatz, Inc. v. Coles*, 319 Mich. 401, 404 (1947)). Superior stated that it paid Harmis all money, including the 25% commission payments, he was owed. ECF 23, PgID 198. Harmis failed to present evidence to dispute that fact. And Harmis stated that he does not even know what percentage he was ultimately paid in commission. ECF 23-2, PgID 232–33. Harmis has failed to meet his burden. The Court will therefore grant summary judgment to Superior on his breach of contract and SRCA claims.

IV. The ADA and Michigan's PDCRA

Harmis alleged that Superior violated the ADA and Michigan's PDCRA by denying him reasonable accommodations, retaliating against him, and terminating his employment because of a disability. ECF 15, PgID 98–103. The ADA and the PDCRA are subject to the same standard. *Smith v. Chrysler Corp.*, 155 F.3d 799, 804 (6th Cir. 1998).

### A. Reasonable Accommodation

A claim of discrimination based on a failure to accommodate requires Harmis to show: (1) he has a disability as defined by the ADA and the PDCRA; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) Superior knew or had reason to know about his disability; (4) he requested an accommodation; and (5) Superior failed to provide the necessary accommodation. *Myers v. Cuyahoga County*, 182 F. App'x 510, 515 (6th Cir. 2006).

Here, even assuming that Superior knew or should have known about Harmis' disability—panic and depression—Harmis never requested an accommodation. Although Harmis did request paperwork for FMLA leave, that request was not a request for a reasonable accommodation. *See Acker v. GM, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017). Harmis made no other requests for accommodations for his disability. His reasonable accommodation claims under the ADA and the PDCRA therefore must fail.

### B. Disability Discrimination

Harmis' disability discrimination claims under the ADA and PDCRA are evaluated under the *McDonnell Douglas* burden-shifting regime. *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 (6th Cir. 2012). Harmis has the initial burden to show that: "(1) he is disabled, (2) he is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) he suffered an adverse employment action because of his disability." *Demyanovich v. Cadon*

*Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014) (citing *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008)).

Here, the first two elements are not disputed. But even assuming that Harmis was terminated, his handicap was not the "but-for" cause of his discharge. Harmis was cited several times for tardiness, failure to comply with internal sales reporting policies, and ultimately for his no-call/no-show absences. And Harmis' own testimony regarding his beliefs about why he was terminated do not indicate that his disability was the reason. His deposition testimony was filled with contradictions, but his initial answer for why he believed that he was terminated was merely that he had an "interracial" relationship with his now-wife. *See* ECF 23-2, PgID 217–19. After a break and consultation with his attorney, he attempted to back-track on the answer and testify that his FMLA leave request was an additional cause. *Id.* at 219–20. Harmis failed to prove a prima facie case for disability discrimination.

But even if his inconsistent statements were sufficient for Harmis to meet his burden of proving a prima facie case of disability discrimination, Superior's rationale for terminating him, analyzed in the context of his FMLA retaliation claim, was legitimate. And Harmis provided no evidence to refute the rationale and show that it was a pretext for discrimination. His disability discrimination claim under the ADA must fail.

C. *Retaliation*

A retaliation claim is also analyzed under the *McDonnell Douglas* burden-shifting regime and requires Harmis to initially prove that (1) he engaged in protected

activity, (2) Superior took an adverse employment action against him, and (3) there was a causal connection between the protected activity and the adverse employment action. *Thomas v. Lighthouse of Oakland*, No. 12-cv-15494, 2016 WL 2344350, at *12 (E.D. Mich. May 4, 2016) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000)).

Here, Harmis has not sufficiently shown that he engaged in any protected activity under the ADA or the PDCRA. As with Harmis' FMLA retaliation claim, Harmis has not shown any causal connection between any protected activity and the alleged termination of his employment by Superior. Rather, the evidence, even taken in the light most favorable to Harmis, indicates that his alleged termination was a result of legitimate reasons, including tardiness, sales reporting and finalizing issues, and poor attendance. His ADA retaliation claim must therefore fail.

V.   Title VII and the ELCRA

Harmis alleged that Superior created a hostile work environment for him based on his "interracial" relationship in violation of Title VII and Michigan's ELCRA. ECF 15, PgID 100–01, 103–04. He also seems to have alleged that he was retaliated against by being terminated from his employment based on the "interracial" relationship. *Id.* at 101, 104. The Court will address each theory in turn. As an initial matter, an actionable claim may be brought under both Title VII and the ELCRA "where an employee is subjected to adverse action [or harassment] because an employer disapproves of interracial association." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130,

12

139 (2d Cir. 2008)); *see also Bryant v. Automatic Data Processing, Inc.*, 151 Mich. App. 424, 430 (1986). Harmis would therefore have a cognizable national origin discrimination claim under Title VII and the ELCRA based on his relationship with his now-wife if he could prove the other requisite elements, outlined below, of each claim.

### A. *Hostile Work Environment*

A plaintiff who alleges that he was subjected to a hostile work environment based on national origin in violation of Title VII must offer evidence showing that "(1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) defendant knew or should have known about the harassment and failed to take action." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1078–79 (6th Cir. 1999). Under Michigan's ELCRA, the elements are substantially the same. *See Quinto v. Cross & Peters Co.*, 451 Mich. 358, 368–69 (1996).

To be actionable, the harassment must be severe or pervasive in two aspects: "Both an objective and subjective test must be met; in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006). The tests are intended to distinguish between "simple teasing, offhand comments, and isolated incidents," which are not actionable, *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), and a "workplace

[that] is permeated with 'discriminatory intimidation, ridicule, and insult,'" which is. *Harris*, 510 U.S. at 21 (citation omitted).

As an initial matter, a hostile work environment claim may be based on alleged hostility towards association between members of different races. *See Barrett*, 556 F.3d at 512. Here, Harmis claimed that he was subjected to a hostile work environment and eventual termination because he was a Chaldean man in a relationship with a non-Chaldean or "white" woman. ECF 15, PgID 103. His claims must fail, however, because he cannot connect the alleged harassment to the fact that he was dating a woman of a different race or national origin. Harmis testified that he faced harassment at work from the first day he started working at Superior in 2015. ECF 23-2, PgID 245. He did not begin dating a non-Chaldean woman until April 29, 2017. ECF 29-3, PgID 579. It cannot logically follow that the harassment he allegedly faced during his first two years at Superior was based on the then-nonexistent relationship.

Harmis did show that when he began his relationship in April 2017, the Robins began questioning him and making comments to him about the relationship. *Id.* at 580. Illustrative comments included that it was against their "religion for [Harmis] to date outside of [his] culture," that he should find a Chaldean woman to marry, that he should not put shame on his uncle, that the woman had children and was just "going to use [him]," and that he did not "want to go down this path." ECF 29-3, PgID 580–81. The comments, made by two people who were also his family members, did not amount to a workplace permeated with "discriminatory intimidation, ridicule,

14

and insult." *Harris*, 510 U.S. at 21. The comments were generally made outside of the presence of other employees and were seemingly made to come across as a family member warning another family member, not an employer speaking to employee. Such "offhand comments," even though they could be construed as offensive, "do not create a hostile work environment." *Hunter v. GM LLC*, No. 17-10314, 2019 U.S. Dist. LEXIS 54855, at \*29 (E.D. Mich. Mar. 31, 2019) (citing *Johnson v. Donahoe*, 642 F. App'x 599, 612 (6th Cir. 2016); *Coles v. Dearborn Midwest Co.*, No. 13-14450, 2015 U.S. Dist. LEXIS 42854, at \*26–32 (E.D. Mich. Mar. 9, 2015)). Harmis' hostile work environment claims therefore fail.

    B.    *Retaliation*

Because Harmis did not present any direct evidence of retaliation, the Court will address his claim as circumstantial under the *McDonnell Douglas* framework. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). Harmis has the initial burden under the framework to show that (1) he engaged in protected activity, (2) the exercise of his protected action was known to Superior, (3) Superior thereafter took an employment action adverse to Harmis, and (4) there was a causal connection between the protected activity and the adverse employment action. *See EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997). Harmis' retaliation claims under the ELCRA carry the same evidentiary burdens. *Thomas v. Lighthouse of Oakland*, No. 12-cv-15494, 2016 WL 2344350, at \*6 (E.D. Mich. May 4, 2016) (citing *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990)).

15

Here, as with his FMLA and disability retaliation claims, Harmis has not shown any causal connection between the protected activity—his relationship with his now-wife—and the alleged termination of his employment by Superior. And even if Harmis was able to make out a prima facie case of retaliation, Superior has articulated a legitimate, non-discriminatory rationale for the termination of Harmis' employment—one that Harmis failed to refute. His retaliation claim therefore fails.

## CONCLUSION

For the foregoing reasons, each of Harmis' claims fail as a matter of law. The Court will therefore grant Superior's motion for summary judgment.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Superior's motion for summary judgment [23] is **GRANTED**.

This is a final order and closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: March 5, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 5, 2020, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager